BALFOUR, WILLIAMSON & Co. v. UNITED STATES (No. 2141).[1]

CANVAS CLOTH WITH COLORED BORDER STRIPE.

Cloth with a blue stripe along each border, made of four warp yarns about an inch from the edge, to serve as a guide in overlapping and sewing the cloth together,

---

[1] T. D. 39161.

is dutiable as colored under paragraph 279, tariff act of 1913, and not admissible free of duty as uncolored under paragraph 408.—Bemis Bro. Bag Co. *v*. United States (11 Ct. Cust. Appls. 373; T. D. 39162), decided concurrently herewith, followed.

## United States Court of Customs Appeals, June 6, 1922.

APPEAL from Board of United States General Appraisers, Abstract 44508.

[Affirmed.]

*Walter Evans Hampton* for appellant.

*William W. Hoppin*, Assistant Attorney General, for the United States.

[Oral argument February 16, 1922, by Mr. Hampton and Mr. Hoppin.]

Before SMITH, BARBER, and MARTIN, Associate Judges; DE VRIES, Presiding Judge, participating in the decision by agreement of counsel.

MARTIN, Judge, delivered the opinion of the court:

The merchandise was described in the invoice as canvas cloth, and consisted of plain woven fabrics composed of single jute yarns. The appraiser reported that the cloth was woven in part of colored yarns, and that these constituted a necessary and substantial part of the fabric. Accordingly he returned it for duty as colored fabrics dutiable at the rate of 10 per cent ad valorem under paragraph 279 of the tariff act of 1913.

The collector assessed duty upon the merchandise in accordance with the appraiser's return, and thereupon the importers protested, denying that the fabrics were colored, and claiming free entry for them as uncolored fabrics of single jute yarns, under paragraph 408 of the act.

The Board of General Appraisers overruled the protest, and the importers appealed.

The two competing paragraphs aforesaid read in part as follows:

279. Plain woven fabrics of single jute yarns, by whatever name known, bleached, dyed, colored, stained, painted, printed, or rendered noninflammable by any process, 10 per centum ad valorem.

(Free list.)

408. * * * plain woven fabrics of single jute yarns, by whatever name known, not * * * colored * * *.

As will be seen from the foregoing statement the present issue is a narrow one, and depends solely upon whether the imported fabrics are colored or not, within the sense of the paragraphs just copied. For it is conceded that they are "plain woven fabrics of single jute yarns," and that they would be dutiable, if colored, under paragraph 279, or free if uncolored, under paragraph 408.

From the exhibits and testimony we learn that the imported cloth is woven in widths of about 36 inches, with selvaged edges; that its component yarns are altogether uncolored except for two blue stripes consisting of four warp yarns, which are respectively about

an inch from either edge and run lengthwise throughout the woven piece. It is said that the fabric in question is primarily used in this country for making tarpaulins, and that the stripes serve as guide lines in overlapping and sewing the cloth together, when used for that purpose. The fabric is also sometimes used as matting or carpet. It is frequently dyed before being put into service, and this operation has the effect of obscuring and indeed of obliterating the colors of the stripes.

The importers lay emphasis upon the conceded fact that the imported fabric is totally uncolored save for the two stripes above described. As to these they say, "The stripe is purely utilitarian, if at all useful; it is not decorative; does not embellish; does not affect the price (except negatively), or the strength of the fabric. The stripe [they continue] is sometimes used as a marginal guide in sewing. It forms an insignificant part of the surface of the fabric." In support of this contention the importers lay stress upon the decision of this court in the case of United States v. Bryant & Beinecke (10 Ct. Cust. Appls. 79; T. D. 38355).

In the case of Bemis Bro. Bag Co. v. United States (11 Ct. Cust. Appls. 373; T. D. 39162), which is decided by this court concurrently with the instant case, we said:

In many cases arising under the various tariff revisions the board and the court have been called upon to decide whether certain imported goods came within the enumeration of colored fabrics within the purview of the law. The decisions perhaps have not been entirely uniform upon the subject. However, it has been accepted as elementary that the term "colored fabrics" is not limited in application to goods which are wholly and entirely colored, but applies also to many fabrics which are colored only in part. And in respect to such partly colored fabrics it is settled that if the colored part thereof be substantial, having reference to appearance, component quantities, and other like considerations affecting the character and condition of the cloth at the time of importation, the cloth itself should be held to be colored, within the sense of the act; but, on the other hand, if the colored part be trifling, insignificant, or negligible, the cloth should be held to be not colored. The question, therefore, becomes one of fact in each case respecting the actual character and condition of the goods when imported. In this view if imported goods be colored in a substantial measure according to the foregoing definition, it is not important whether the color be ornamental, or serves a useful purpose, or is permanent, or is visible when in final use, or adds to the marketable value of the goods. For the only question asked by the statute in this particular is one relating to the actual condition of the goods at the time of their importation, and not the motive therefor nor the result thereof.

*      *      *      *      *      *      *

The present inquiry therefore addresses itself solely to the condition of the fabric in controversy when landed, and the question is whether a substantial part thereof was in fact colored. The board has held in the affirmative, and we agree with that conclusion. It is clear that at times it may be difficult and uncertain in practice to find the dividing line between a substantial and an insignificant coloring of fabrics, and a review of the published decisions would amply sustain that statement. In this case, however, an inspection of the goods discloses that the colored stripes aforesaid, although covering less than 3 per cent of the surface, are not only clearly distinguishable from

the uncolored part of the fabric, but are, in fact, distinctly observable and even conspicuous. Both in appearance and structure they form a substantial part of the surface and body of the fabric. This statement comports also with the statements of the witness that the stripes serve the purpose of identifying the goods to the trade as padding, since manifestly that purpose would best be served by distinct and conspicuous markings.

We think that the foregoing extracts from our former decision sufficiently cover the present case. It is true that these stripes consist of only 4 yarns each, whereas the former ones were composed of 6 yarns. And it does not appear in this case as in the former one that the stripes were intended to serve for the identification of the cloth in the markets, their purpose apparently being as guide lines as above stated. It must be conceded therefore that the present is a border-line case in relation to such merchandise. Nevertheless, the principles underlying the two cases are essentially similar, since in each case the stripes are a conspicuous feature of the goods when exposed to view, and constitute a substantial part of the warp threads of the fabric.

In the former decision we referred to the case of United States *v.* Bryant & Beinecke, supra, upon which the appellants rely in part in the present case, and indicated that if the goods therein involved be carefully considered, the conclusion reached in that case will be found to be consistent with this.

Accordingly, the decision of the board overruling the protest is *affirmed*.

CONCURRING OPINION BY BARBER, JUDGE.

Paragraph 408 covers fabrics *not colored*, while paragraph 279 covers those which are *colored*.

Therefore, to sustain importers' contention they must establish that the merchandise is *not* colored.

Were the question to be decided de novo without regard to previous legislative history or judicial interpretation, the view might be entertained that the word "colored" in its common meaning, and that is the question here, as applied to fabrics, contemplates the coloring of substantially the entire surface of the fabric, and consequently that there must be an absence of an imparted color to constitute a fabric not colored. It seems, however, in view of the legislative and judicial history, as shown by the main opinion, that if a fabric is colored in part it must now for tariff purposes be regarded as colored. The color of the threads in question here is in striking contrast to that of the rest of the fabric, and in my opinion it causes the surface to present an appearance so different from what it would be if such color was absent that the ordinary observer could not say the fabric was not colored, but would say that it was partially colored or striped.

As I view it there is quite a distinction between this case and that of United States v. Bryant (10 Ct. Cust. Appls. 79; T. D. 38355). There the fabric had a single blue warp thread equally visible on both sides of the fabric, and about 1 inch from the edge. It appeared that the office of these threads was solely and merely as a helpful marginal guide line for operators in overlapping and sewing the widths together in making various things for which the importation was almost exclusively used, and that when so sewed the colored threads, generally speaking, were no longer visible; that they could be removed without appreciably impairing the integrity of the fabrics, and were not a necessary part of it. The Board of General Appraisers had held the cloth to be not colored. This court upheld that conclusion.

In the case at bar it appears that there are two colored double warp threads equally visible on both sides of the fabric and about an inch from each selvage. These threads are of such contrasting color with the rest of the fabric and of such width that at the hearing before the board counsel for both sides, as well as the only witness who testified (for importers) generally, and we think quite naturally, referred to them as a "stripe." The testimony was to the effect that the merchandise was brought in primarily for tarpaulin cloths, to which it was partly devoted. When used in making tarpaulins the stripe served the purpose of a guide line in sewing the goods together. It was also, importers' witness said, sold by them for carpets, and when devoted to that purpose the stripe did not serve as a guide at all. An illustrative collective exhibit was introduced in evidence showing samples of the importation dyed for carpet purposes, and upon these samples the stripe is much less noticeable than upon the official exhibit. The testimony also showed that the threads constituting these stripes could not very well be removed without impairing the strength and integrity of the fabric.

In the Bryant case the board sustained the protest. Here it has been overruled, and I do not think importers have established such a state of facts as justifies their contention that the Bryant case is conclusive of the issue here. Assuming the principle of that case to be sound, I do not think it should be further extended.

In my opinion the determinative question is not whether the colored yarns form a necessary and substantial part of the article but rather whether they impart sufficient color to the surface of the fabric as to exclude the conclusion that it is not colored either partially or wholly.

In any event, I do not understand, in the absence of commercial designation, how a fabric which has colored stripes, such as the fabric here, upon its surface when imported can be said to be not colored at that time.

I therefore concur in the conclusion that the judgment below should be *affirmed.*

### CONCURRING OPINION BY SMITH, JUDGE.

The cloth has four colored yarns running through the warp about an inch from the selvage.   According to the uncontradicted evidence these colored yarns serve as a guide stripe or guide line for the overlapping and sewing together of strips of the cloth in the making of tarpaulins.   It also appears that the goods are used as carpets, but it does not appear that when so used the colored yarns serve as a guide stripe.

If the fabric undyed be used for carpets, it is evident that the colored stripe would give a character to the carpet which it would not otherwise possess.

I therefore concur in the conclusion reached for the reasons stated by me in Bemis *v.* United States, suit No. 2137, this day decided.