BEMIS BRO. BAG CO. *v.* UNITED STATES (No. 2137).[1]

1. COLORED FABRICS.

It has been accepted as elementary that the term colored fabrics (pars. 279 and 408, tariff act of 1913) is not limited in application to goods which are wholly or entirely colored, but applies also to many fabrics which are colored only in part. And in respect to such partly colored fabrics it is settled that if the colored part thereof be substantial, having reference to appearance, component quantities, and other like considerations affecting the character and condition of the cloth at the time of importation, the cloth itself should be held to be colored within the sense of the act; but, on the other hand, if the colored part be trifling, insignificant, or negligible, the cloth should be held to be not colored. It is not important whether the color be ornamental or serves a useful purpose or is permanent or is visible when in final use or adds to the marketable value of the goods.

2. JUTE PADDINGS, COLORED BORDER.

Plain woven jute padding to be used as interlining or stiffening for coats, with a colored stripe along each selvage made of six warp threads about a quarter of an inch from the edge and about three-eighths of an inch wide, constituting less than 3 per cent of the surface of the cloth and serving no purpose other than as an identification mark, is dutiable as colored jute fabric under paragraph 279, tariff act of 1913, and not admissible free of duty under paragraph 408 as uncolored jute fabric.

United States Court of Customs Appeals, June 6, 1922.

APPEAL from Board of United States General Appraisers, G. A. 8464 (T. D. 38850).

[Affirmed.]

*Waterhouse & Lockett* for appellant.

*William W. Hoppin,* Assistant Attorney General (*David Hyams,* special attorney, of counsel), for the United States.

---

[1] T. D. 39162.

[Oral argument February 23, 1922, by Mr. Waterhouse and Mr. Hoppin.]

Before SMITH, BARBER, and MARTIN, Associate Judges; DE VRIES, Presiding Judge, participating in the decision by agreement of counsel.

MARTIN, Judge, delivered the opinion of the court:

The importations now before the court consist of certain woven fabrics composed of single jute yarns, and the sole issue in the present case is whether they are colored or not colored, within contemplation of the tariff act of 1913.

There are two paragraphs of the act which severally relate to merchandise of this character, to wit, paragraph 279, which imposes duty upon such goods if colored, and paragraph 408, which grants them free entry if not colored. These goods were classified and assessed with duty by the collector under paragraph 279, which assessment was protested by the importers upon a claim for free entry under paragraph 408. It is conceded by both parties in the case that the importations should be governed by one of the two paragraphs in question.

The paragraphs read as follows:

279. Plain woven fabrics of single jute yarns, by whatever name known, bleached, dyed, colored, stained, painted, printed, or rendered noninflammable by any process, 10 per centum ad valorem.
(Free list.)
408. * * * plain woven fabrics of single jute yarns, by whatever name known, not bleached, dyed, colored, stained, printed, or rendered noninflammable by any process; * * *.

The question as aforesaid is whether the imported goods are dutiable as colored fabrics, under paragraph 279, or are entitled to free entry as goods not colored, under paragraph 408. This question was submitted upon exhibits and testimony to the Board of General Appraisers, and the collector's assessment was sustained. The importer has appealed from that decision.

The fabric in question is known as jute padding. It is a stiff and heavy material, and is said to be manufactured and used solely as an interlining for men's and women's coats. It serves as a means of adding stiffness, body, and shapeliness to such garments, and when in place in a garment it is concealed from view.

The fabric in the piece is plain-woven throughout, is about 24 inches in width, and has a selvage of jute or cotton yarn. It is concededly uncolored, except for two stripes composed of six warp threads each, either blue or red in color, the stripes being severally about one-quarter of an inch from the selvage edge, and running lengthwise throughout the piece. The stripe threads constitute pro tanto the warp threads of the fabric. Concerning these stripes the board said: ''It is true that the colored warp threads here in question serve no useful purpose either by way of ornamentation or to give

color effect, as the interlining is entirely concealed from view when used in a garment." It appears, however, from the testimony that the stripes serve the purpose of identifying this class of cloth in the trade. It is said that "it has been a practice for a good many years and it is sort of known in the trade that padding carries a colored border;" and again that the colored threads "serve as a brand or trade-mark to identify jute padding." It is said, moreover, by the witness that the jute paddings or linings "would do just as well for all purposes * * * if there was not any color in them."

The two colored stripes aforesaid are the sole feature relied upon by the Government for the assessment of the goods as colored fabrics, the stripes being as aforesaid composed of six yarns each, each stripe being about three-eighths of an inch wide, each running the entire length of the piece at a distance of about a quarter of an inch from the selvage edge, but forming no part of the selvage itself. Other-wise, it is conceded, the goods are not colored, and the sole question therefore is whether the presence of the colored stripes in the fabric as aforesaid is sufficient to serve as a basis for the board's finding that the goods are colored, within the purview of the statute. The importer answers this inquiry by the contention that "the issue here is solely whether the colored portion is of sufficient importance on any ground of ornamentation, use or necessary function to bring this fabric into the class of colored fabrics. It is submitted [continues the importer] that the colored threads here are of no significance."

In many cases arising under the various tariff revisions the board and the court have been called upon to decide whether certain imported goods came within the enumeration of colored fabrics within the purview of the law. The decisions perhaps have not been entirely uniform upon the subject. However, it has been accepted as elementary that the term "colored fabrics" is not limited in application to goods which are wholly and entirely colored, but applies also to many fabrics which are colored only in part. And in respect to such partly colored fabrics it is settled that if the colored part thereof be substantial, having reference to appearance, component quantities, and other like considerations affecting the character and condition of the cloth at the time of importation, the cloth itself should be held to be colored within the sense of the act; but on the other hand if the colored part be trifling, insignificant, or negligible, the cloth should be held to be not colored. The question therefore becomes one of fact in each case respecting the actual character and condition of the goods when imported. In this view, if imported goods be colored in a substantial measure according to the foregoing definition, it is not important whether the color be ornamental, or serves a useful purpose, or is permanent, or is visible

when in final use, or adds to the marketable value of the goods. For the only question asked by the statute in this particular is one relating to the actual condition of the goods at the time of their importation, and not the motive therefor nor the result thereof.

This statement finds apt support in the decision of this court in Heyliger et al. *v.* United States (11 Ct. Cust. Appls. 90; T. D. 38735), relating to certain cotton cloth, the warp yarn of which, before weaving, had been treated with a so-called fugitive tint solely for the purpose of assisting the weaver to distinguish the two yarns. The tint imparted color to a substantial portion of the cloth when imported. It appears that the tint was temporary; that it added absolutely nothing to the market value or final usefulness of the cloth, nor was it intended to, since it was invariably removed before the cloth was put to any use by the final consumer. Nevertheless the court held the cloth to be dutiable as colored cloth, since that was its condition when landed. The court said: "The tariff provision in question prescribes but a single criterion in this particular, and that is whether the cloth is colored or not at the time of importation. If so, it becomes dutiable as colored cloth, regardless of the means or motive with which it was colored, or the subsequent history of the article as intended by the importers."

The present inquiry therefore addresses itself solely to the condition of the fabric in controversy when landed, and the question is whether a substantial part thereof was in fact colored. The board has held in the affirmative, and we agree with that conclusion. It is clear that at times it may be difficult and uncertain in practice to find the dividing line between a substantial and an insignificant coloring of fabrics, and a review of the published decisions would amply sustain that statement. In this case, however, an inspection of the goods discloses that the colored stripes aforesaid, although covering less than 3 per cent of the surface, are not only clearly distinguishable from the uncolored part of the fabric but are in fact distinctly observable and even conspicuous. Both in appearance and structure they form a substantial part of the surface and body of the fabric. This statement comports also with the statements of the witness that the stripes serve the purpose of identifying the goods to the trade as padding, since manifestly that purpose would best be served by distinct and conspicuous markings.

In support of this conclusion we refer to some of the cases upon this subject which have been adjudicated by the board and the courts.

In Young et al. (T. D. 17255, G. A. 3517), decided May 12, 1896, the board said in part:

The board has uniformly held that cotton cloths, when containing colored threads in the different forms of figures, stripes, checks, or otherwise, and whether covering

much or little of the surface of the fabric, were dutiable under the tariff provisions for colored cotton cloths, and these decisions accord with the action of the classifying officers of customs at the several ports and the rulings of the Treasury Department covering a period of many years and under different tariff acts containing provisions for cotton cloths similar to those of the present act.

In the Delta Bag Co. case (T. D. 23286, G. A. 4997), decided September 24, 1901, the board held that certain jute bags having two stripes of colored yarns, constituting 7.5 per cent of the warp, were thereby excluded from classification as bags or sacks made from plain woven fabrics, *not* colored. The board held the stripes to be necessary, substantial, and integral parts of the bag, saying:

What would amount to a necessary and substantial element or part of merchandise must depend largely upon the facts of each case, commercial usage, the use to which an article may be put, etc. From the record and samples in this case we find, as above stated, that the colored or dyed yarns constitute a necessary and substantial part of the fabric, and accordingly the protest is overruled and the decision of the collector is affirmed.

In the Meyer & Co. case (T. D. 23618, G. A. 5105), decided March 24, 1902, the board held that bags of single jute yarns, containing a colored stripe 1 inch wide, were thereby excluded from classification as bags *not* colored; but that bags containing a single jute yarn of the warp were not so excluded. The board said: "We further find that the stripe consisting of a single jute yarn down each side of the sample mentioned does not constitute a necessary or substantial part of the article."

In the Adolf Fricke case (T. D. 25599, G. A. 5795), decided September 12, 1904, the board held that certain cotton cloth containing a single colored yarn running near the edge of the fabric, was dutiable as "cotton cloth, colored," under paragraph 304, tariff act of 1897, upon the ground that the coloring was "substantial." See also the case of John C. Graffin Co. (Abstract 42793).

The case of United States *v.* Bryant & Beinecke (10 Ct. Cust. Appls. 79; T. D. 38355) is relied upon by the importer as authority for its claim. In that case this court dealt with unbleached cotton duck or canvas about 30 inches wide having a single blue mark thread running lengthwise of the fabric about an inch from each side, the thread being equally visible on both sides. It was found that these threads were introduced into the fabric solely and merely as a helpful guide line for operators in overlapping and sewing the widths together in making sails, tents, wagon covers, tarpaulins, etc., for which duck with such colored lines is used almost exclusively; that the threads were not necessarily apparent in the canvas after being sewn together, as they might be obliterated by the stitching; that they were not a necessary part of the fabric, as they could be removed without appreciably impairing the integrity of it; that they were trivial in character and value, the cost of the duck being the same

with or without them; and that they represented and covered but an insignificant part of the surface area of the fabric. This court sustained the board in holding that the cloth thus described was not dutiable under the provision for colored cloth, and we think that the decision was plainly justified under the general principles above expressed, since the single colored thread in question was found to be an insignificant and not a substantial element in the fabric as imported. We can not see any inconsistency between the foregoing decision and that reached by us in the instant case.

We have not overlooked the fact that it has been an administrative practice in the customs service since the enactment of the tariff act of 1913 to classify goods of this character as not colored and as entitled to free entry consistently with the claim made by the importer herein. That practice, however, was in contravention of the law, as we understand it, and it should not be given a controlling effect in the case. Nor has it continued a sufficient time to have received an implied legislative sanction.

In accordance with the foregoing view we affirm the decision of the board. *Affirmed.*

### CONCURRING OPINION BY SMITH, JUDGE.

I concur in the conclusion reached.

The goods are represented by two exhibits, one of which, Exhibit 3, is a plain-woven fabric composed of uncolored jute yarns with the exception of a stripe three-eighths of an inch from the edge, into the warp of which stripe is woven six threads or yarns colored blue, and to that extent differing from the other threads or yarns composing the fabric. Exhibit 4, the other exhibit, differs from Exhibit 3 in the particular only that the warp threads of the stripe are red instead of blue.

On the hearing before the board, Morris A. Goldman, president of the Milford Manufacturing Co., on behalf of the importer testified that the importation was known as jute padding, and that it was used for padding or interlining men's and women's coats and overgarments. He said that the colored stripes in the cloth were woven into it for the purpose of identifying it to the trade as padding, and that when the padding was once sewn into a garment the stripes could no longer be seen and served no useful purpose. This witness also stated that goods of the same construction and of equal width might be used for other purposes than padding, although he knew of no such use. He said that since the passage of the tariff act of 1913 similar goods had been admitted free of duty under paragraph 408.

W. W. Hirtle, an examiner at the port of Boston, called on behalf of the importer, testified that the goods having a selvage containing six colored threads or yarns had been admitted free of duty since 1918,

and that prior to that time his predecessor in office admitted free of duty like goods imported under the act of 1913.

On the evidence submitted to it the board held that the colored stripe was not included in the selvage of the cloth and that it constituted a material and essential part of the fabric, inasmuch as the colored threads composing it could not be withdrawn without destroying or impairing the usefulness of a part of the fabric at least. On that finding the board overruled the protest and the importer appealed.

The appellant contends first, that the colored stripe is an insignificant portion of the fabric inasmuch as it constitutes only three-eighths of an inch of the width of a fabric 22 inches wide, and the colored threads composing it are less than 3 per cent of the total warp threads in the cloth; second, that the colored threads do not embellish or ornament the fabric in any way and serve no purpose other than that of identifying a particular brand or class of cloth; and third, that administrative practice has established the classification of the goods as uncolored jute fabrics.

Just what is a cloth colored has given rise to considerable apparent if not actual conflict of decision attributable in most cases to a peculiar wording of the particular statutes interpreted and in a few cases to a strict construction which took into account only the presence of color and declined to consider whether the color present embellished, decorated, or ornamented or advanced the cloth or made it more pleasing or attractive to the eye or desirable to the ultimate consumer by giving to it a tint, shade, hue, or color other than that which was natural to it.

And so we find that under a provision which laid a duty on cotton cloths colored, it was held that cotton cloths figured, striped, or checked by colored·threads, whether covering *much* or *little* of the surface of the fabric, were dutiable as colored cotton cloths. (Pars. 253 and 254, act of 1894, T. D. 17255; G. A. 3517; T. D. 24217; G. A. 5278.)

On the other hand a provision which laid a duty on bags or sacks made from plain woven fabrics of single jute yarns *not* colored, was held inapplicable to·bags having a colored stripe about an inch wide (T. D. 23286) and applicable to bags which contained a single colored thread along one side. (Par. 343, act of 1897; T. D. 23618.)

The board held that Jacquard figured goods having a thread different in color from the other threads and running straight across the back, but not appearing on the right side of the fabric, was not dutiable·under paragraph 387, act of 1897, as Jacquard figured goods having two or more colors in the filling. (T. D. 22178.) Judge Townsend of the Circuit Court reversed that decision and decided that although the colored threads appeared only on the back of the

cloth, they were nevertheless "colored threads in the filling" and therefore came within the express terms of the statute.—Johnson v. United States (123 Fed. 997).

The board evidently regarded Judge Townsend's ruling as a reversal not only of their holding in T. D. 22178 but also of that part of T. D. 23618 which held that bags having a single colored thread along one side were not colored, and therefore the board ruled that a single colored thread whether on the side of jute bags or on the edge of cotton cloth constituted a colored fabric. (T. D. 23309; T. D. 25599.) Indeed, Johnson v. United States, supra, exerted such a potent influence that the board materially modified its earlier rulings as to colored cottons and held that cotton cloth was colored even if the color effect was produced by the introduction of extra threads; that is to say, threads other than the warp and weft threads. (T. D. 27762; T. D. 28447.) These decisions were reversed, however, by the Circuit Court and that reversal was affirmed by the Circuit Court of Appeals.—United States v. Rusch et al. (160 Fed. 279); United States v. Rusch & Co. (167 Fed. 523). In order to meet the decision of the Circuit Court and the Circuit Court of Appeals, Congress passed paragraph 320 of the act of 1909, which defined cotton cloth dyed or colored to be—

*all cotton cloth * * * which has any dyed, colored * * * or printed threads in or upon any part of the fabric.*

From the legislation on colored cloths and fabrics with colored threads and the judicial interpretations of it, it is apparent that decisions construing a provision for fabrics having colored yarns or threads in the filling or for cloth having colored threads or yarns in any part of the fabric, can not be regarded as useful in determining the meaning of a provision for cloth colored. In other words, a cloth which has a colored thread or threads in it is not *necessarily* a colored cloth, although it might well be regarded as a cloth with colored threads in the filling or as having colored threads in or upon some part of the fabric.

In my opinion a colored cloth is one which, when ready for its final use, is embellished, decorated, ornamented, advanced, or made more pleasing or attractive to the eye, or which may be more desirable to the ultimate consumer by reason of a tint, shade, hue, or color other than that which is natural to it.

The colored yarns in the cloth in issue are so placed that they are apparent when the fabric is finally prepared for its ultimate use, and beyond question the colored stripes formed by such yarns, whether introduced for the purposes of identification or not, do substantially embellish, decorate, and ornament the cloth of which they are a part and give to the fabric ready for use a character and pleasing

effect not possessed by a cloth without such yarns. In my opinion such a fabric is colored and therefore within the terms of paragraph 279.

The contention of the appellant that the stripes are trade marks or brands to identify a particular kind of cloth may be correct; nevertheless there is nothing about them which reveals that that is their purpose or which differentiates them in any way from colored stripes designed to embellish, and that suffices to bring the goods within the designation of jute fabrics colored. To hold otherwise would mean in principle that the purpose of the manufacturer, not apparent from the goods themselves, rather than their true nature and character, determines classification, and we are not ready to go that far, especially as any such ruling as that might finally result in transferring to the free list all single jute yarn fabrics ornamented with colored stripes or colored figures.

It is argued that the padding when introduced into the lining of overcoats and overgarments is concealed from view and that the stripes on the padding can not be regarded as an embellishment or an ornament to the goods inasmuch as they can not be seen. That argument is not sound, inasmuch as the stripes on the goods when prepared and ready for their ultimate use are a visible embellishment of the cloth. Moreover, there is nothing in the record which would warrant the conclusion that the fabrics are used exclusively for padding. Indeed, importer's witness, Goldman, testified that similar goods might be used for other purposes than padding, although he knew of no such use.

The claim that it was long the administrative practice to admit as uncolored jute padding of the kind here in controversy can not be sustained, inasmuch as the goods themselves disclose that they are ornamented with a colored stripe and that therefore they are colored jute cloth. Established administrative practice, especially if long continued, should be accorded great weight in reaching a conclusion as to the proper construction of a statute and the true legislative intention.—United States *v.* Philbrick (120 U. S. 52, 59); Psaki Bros. *v.* United States (3 Ct. Cust. Appls. 479; T. D. 33122); United States *v.* Borgfeldt & Co. (7 Ct. Cust. Appls. 367; T. D. 36909); Vandegrift & Co. *v.* United States (8 Ct. Cust. Appls. 1, 8; T. D. 37121). But the established administrative practice can not be invoked to defeat the legislative will when clearly expressed or to give goods a classification not warranted by their true nature, character, or commercial designation.—Pacific Creosoting Co. *v.* United States (1 Ct. Cust. Appls. 312, 315; T. D. 31407); Lloyd Co. *v.* United States (9 Ct. Cust. Appls. 280, 284; T. D. 38217); Pittsburgh Plate Glass Co. *v.* United States (2 Ct. Cust. Appls. 389, 391; T. D. 32162); Bloomingdale Bros. *v.* United States (3 Ct. Cust. Appls. 204, 205; T. D. 32530); Robertson *v.* Downing (127 U. S. 607, 613).

CONCURRING OPINION BY BARBER, JUDGE.

Concurs for the reasons stated in his concurring opinion in Balfour, Williamson & Co. *v.* United States (11 Ct. Cust. Appls. 368; T. D. 39161), this day handed down.