COSMOS TEXTILE CORP. *v.* UNITED STATES (No. 3628)[1]

United States Court of Customs and Patent Appeals, May 22, 1933.

*Walden & Webster (J. L. Klingaman* of counsel) for appellant.
*Charles D. Lawrence,* Assistant Attorney General (*William H. Futrell,* special, attorney, of counsel), for the United States.

[Oral argument April 4, 1933, by Mr. Klingaman and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The collector classified certain cloth, imported at the port of New York, under paragraph 906 of the Tariff Act of 1930, and assessed the same with duty at 60 per centum ad valorem.

[1] T. D. 46449.

By protest, the importer claimed the merchandise dutiable under paragraph 904 of said act at the appropriate rate in accordance with the yarn count thereof, plus such additional rates in paragraphs 904 (d) and 905 as were applicable. Other claims were made, but in view of our conclusion, it will not be necessary to consider same.

The United States Customs Court overruled the protest and held the merchandise dutiable as assessed. From the judgment of the trial court, appellant appeals here.

The pertinent portions of the three paragraphs to be considered read as follows:

PAR. 904. (a) Cotton cloth, not bleached, printed, dyed, or colored, containing yarns the average number of which does not exceed number 90, 10 per centum ad valorem and, in addition thereto, for each number, thirty-five one-hundredths of 1 per centum ad valorem; exceeding number 90, 41½ per centum ad valorem: *Provided*, That none of the foregoing shall be subject to a less duty than fifty-five one-hundredths of 1 cent per average number per pound.

(b) Cotton cloth, bleached, containing yarns the average number of which does not exceed number 90, 13 per centum ad valorem and, in addition thereto, for each number, thirty-five one-hundredths of 1 per centum ad valorem; exceeding number 90, 44½ per centum ad valorem.

(c) Cotton cloth, printed, dyed, or colored, containing yarns the average number of which does not exceed number 90, 16 per centum ad valorem and, in addition thereto, for each number, thirty-five one-hundredths of 1 per centum ad valorem; exceeding number 90, 47½ per centum ad valorem.

(d) In addition to the duties hereinbefore provided in this paragraph, cotton cloth woven with eight or more harnesses, or with Jacquard, lappet, or swivel attachments, shall be subject to a duty of 10 per centum ad valorem, and cotton cloth, other than the foregoing, woven with two or more colors or kinds of filling, shall be subject to a duty of 5 per centum ad vlorem.

PAR. 906. Cloth, in chief value of cotton, containing wool, 60 per centum ad valorem.

PAR. 1122. Fabrics (except printing-machine cylinder lapping in chief value of flax), in the piece or otherwise, containing 17 per centum or more in weight of wool, but not in chief value thereof, and whether or not more specifically provided for, shall be dutiable as follows:

That proportion of the amount of the duty on the fabric, computed under this schedule, which the amount of wool bears to the entire weight, plus that proportion of the amount of the duty on the fabric, computed as if this paragraph had not been enacted, which the weight of the component materials other than wool bears to the entire weight.

The merchandise at bar consists of what is known as cotton waste tweeds or cotton waste suitings, and is sold in in this country chiefly to the manufacturers of cheap knee pants. The cloth contains from 2 to 3 per centum of woolen fibers. No yarn is all wool, but the fibers are scattered promiscuously in the yarns. The yarn from which the cloth is woven is made from rags which are shredded. While it is the intention of the manufacturers to shred nothing but cotton rags, some rags containing small quantities of wool are inadvertently mixed therewith. The record shows that the wool is not

intended to serve any useful purpose other than that served by cotton and does not improve the fabric or give character to it; that in ordering such cloth, cotton cloth is ordered, and that the trade in buying the cloth does not take into consideration the woolen content. While the testimony shows that the amount of wool in the cloth at bar ranges from 2 to 3 per centum, one witness stated that some shipments may have less, and others have as high as 10 per centum wool.

It is the contention of the importer that the merchandise should be classified as cotton cloth inasmuch as the wool does not give the cloth any character other than that of cotton cloth; that the small amount of wool contained therein should be regarded as an impurity, and that, under certain decisions which will be hereinafter discussed, the trial court erred in overruling the protest and in taking any consideration of the wool contained in the merchandise.

The Government, after citing numerous authorities, argues that the wool present in the cloth can not be regarded as an impurity, and that it is not a negligible quantity and can not be ignored in classifying the cloth for duty. The Government urges the pertinency of the decision in the case of *Magone* v. *Luckemeyer*, 139 U. S. 612, relied upon by the court below, and argues that paragraph 906 for "cloth, in chief value of cotton, containing wool" aptly describes the merchandise, and that it was the congressional intent in framing such paragraph to include therein just such merchandise as is at bar.

While we have found no decided case where the facts are identical with those at bar, we think the weight of authority supports the position taken by the court below that the merchandise is dutiable as assessed and not as claimed. The *Magone* v. *Luckemeyer* case, *supra*, decided by the Supreme Court of the United States, involved an importation of dress goods containing from 1.99 to 4.47 percentage of cotton, and it was held that there was sufficient cotton content to exclude it from the provision for dress goods composed wholly of wool, and bring it within the provision for dress goods in part of wool. In that case the cotton was introduced into the warp of the fabric prior to the spinning process. The filling was entirely of wool. The warp consisted of woolen and cotton fibers twisted together. In appearance, texture, quality, and use the goods were indistinguishable from women's dress goods composed wholly of wool, and the cotton in them could be discovered only by chemical analysis. The cotton was originally introduced into the warp for the purpose of changing the classification of the goods. The decision of the court obviously was prompted, in a large measure, by the existence in the Tariff Act of 1883, there involved, of a special provision for a lower rate of duty on goods when composed in part of wool. The situation there seems quite analogous to the one confronting us.

In the Tariff Act of 1930, as in the Tariff Act of 1883, Congress made a "special provision" for cloth which was in part of wool or

contained wool. That Congress, in the act of 1930, was solicitous to specially treat, for tariff purposes, the wool contained in cloth, even though the amount might be regarded as small when compared to the other constituent materials, is further emphasized by the fact that it made another special provision, in paragraph 1122, for fabrics which contained "17 per centum or more in weight of wool, but not in chief value thereof, and whether or not more specially provided for." The context of the provisions under consideration would seem to emphatically suggest, as the court below aptly stated, that the merchandise at bar falls "within the clear and express provision of said paragraph 906" which is for "cloth, in chief value of cotton, containing wool."

We can not regard the instant case controlled by the legal maxim, *de minimis non curat lex.* Under the circumstances of this case, 2 to 3 per centum of wool in cloth, which is in chief value of cotton, can not be ignored. The attitude of this court in this kind of situation, we think, is illustrated by a consideration of two cases which are regarded as most pertinent for this purpose.

In *United States* v. *Bryant & Beinecke,* 10 Ct. Cust. Appls. 79, T. D. 38355, this court had under consideration the question as to what constituted colored cotton cloth under the Tariff Act of 1913. The unbleached cotton duck or canvas cloth being considered contained a single blue warp thread running lengthwise of the fabric about one inch from each side and was equally visible on both sides of the cloth. The colored threads were not introduced into the fabric for embellishment or ornamentation but solely as a helpful marginal guide line for operators in overlapping and sewing the widths together in making sails, tents, etc. The threads could have been removed without impairing the integrity of the cloth, and were trivial in character and value. In that case the court held that the colored threads which formed a part of the cloth did not substantially color the cloth or give character to it, and that the cloth, therefore, was not, for tariff purposes, to be regarded as colored.

The case of *Bemis Bro. Bag Co.* v. *United States,* 11 Ct. Cust. Appls. 373, T. D. 39162, involved woven fabric, composed of single jute yarns, known as jute padding. It was plain woven and uncolored, except for two stripes composed of six threads each, either blue or red in color, the stripes being severally about one-quarter of an inch from the selvage edge, and running lengthwise throughout the piece. The colored portion of the cloth gave no ornamentation or color effect when the cloth was put to use as an inner lining or padding for coats. The stripes served the purpose of identifying the class of cloth to which it belonged. The colored warp threads served no useful purpose, except as above indicated, which could not be served as well by uncolored threads. The issue before the court was whether

a substantial part of the fabric was in fact colored when the importation was landed in this country. The lower court held that it was colored cloth and not entitled to free entry as being plain woven, uncolored, etc. This court pointed out that although the colored stripes covered less than 3 per centum of the surface, they were conspicuous and formed a substantial part of the surface and body of the fabric. It was held that the cloth was colored.

The importer relies strongly on G. A. 5018, T. D. 23348, where the Board of United States General Appraisers (now United States Customs Court) passed upon the dutiable classification of cotton and jute crash. It contained 54.66 per centum cotton as against 45.34 per centum jute. The merchandise was assessed under the provision for "all manufactures of cotton" in the Tariff Act of 1897. The importer claimed that it was dutiable as cotton cloth. For reasons set out in the decision, which hardly require repetition in detail here, the board held that, owing to the presence of material other than cotton, it could not be regarded as cotton cloth even though it was in chief value of cotton. In an opinion by General Appraiser Somerville appears the following:

Since the rendition of this decision (more than twenty years ago) [*Schmieder* v. *Arthur*, referred to in T. D. 4565], the practice at the various ports of this country seems to have been uniform in applying the countable clauses to goods made wholly or substantially of cotton, and to such goods only, mixed goods being placed under other provisions.

It will be noted that in the same opinion, however, is the following:

\* \* \* We are not to be understood, however, as deciding that the term may not be held to embrace cloth which is commercially and commonly known as cotton cloth, and is substantially such in fact, although it may contain a small percentage of other materials, *where no special provision is made for such manufactures in the tariff act.* (Italics ours.)

In the instant case, special provision, such as is referred to by General Appraiser Somerville, has been made for manufactures such as are at bar.

Under that portion of appellant's brief devoted to the contention that the wool is an impurity and therefore can not control the classification of the cloth, the following cases were cited and discussed: *United States* v. *R. R. Rogers Chemical Co.*, 18 C. C. P. A. (Customs) 45, T. D. 44024, involving naphthalene containing, as an impurity, acenaphthene, in which case the court held that it was nevertheless a commercial naphthalene; *Goldschmidt-Thermit Co.* v. *United States*, 3 Ct. Cust. Appls. 187, T. D. 32467, where a metal component other than manganese was treated as an impurity; *United States* v. *Olivier Straw Goods Corp.*, 19 C. C. P. A. (Customs) 71, T. D. 44898, where a fraction of 1 per centum of sulphur was treated as an impurity in cellulose braids; and *United States* v. *Henderson*, 5 Ct. Cust. Appls. 62, T. D.

34097, where sawdust or rubbish did not change the character of "sweepings of gold and silver."

Without discussing the matter in great detail, it is sufficient to say that the holdings in the above cases, as we see them, are based upon an entirely different principle than is our holding in the case at bar. We can not here regard the wool which went into the fabric as an impurity in the sense that that term is used in the above-cited cases. Wool is one of the desirable constituents in cloth used for making clothing. It certainly is not shown in this case to be an undesirable one, and while it does not give character to the cloth in the trade, it serves, in the cloth, its usual wool function, even though, under the particular circumstances of this case, to an extent which is regarded as unimportant by the trade.

The other cases cited by appellant have been carefully examined, and we think that there is nothing contained therein that would warrant us in reaching a conclusion as to the dutiable status of the merchandise at bar different from that of the court below, and its judgment is *affirmed*.

GARRETT, J., dissents.