(C.D. 2772)

F. Powers Co., Inc.
Hoyt, Shepston & Sciaroni
*v.* United States

United States Customs Court, Second Division

(Decided September 20, 1966)

*Glad & Tuttle* (*George R. Tuttle* of counsel) for the plaintiffs.
*J. William Doolittle,* Acting Assistant Attorney General (*Charles P. Deem* and *Alfred A. Taylor, Jr.,* trial attorneys), for the defendant.

Before Rao and Ford, Judges

Rao, Chief Judge: Plaintiff, F. Powers Co., Inc., is the importer of certain bleached cotton cloth which was assessed with duty at the rate of 13¾ per centum ad valorem, as colored cotton cloth within the provisions of paragraph 904(c) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802. It is claimed in this action that the cloth in issue is not colored and is, therefore, properly dutiable at only 11¾ per centum ad valorem, as provided in paragraph 904(b) of said act, as so modified.

The competing provisions contain the following specifications:
Paragraph 904 (c), as modified, *supra*—

| | |
|---|---|
| Cotton cloth, printed, dyed, or colored, containing yarns the average number of which— | |
| Does not exceed number 60, if valued at more than 90 cents per pound; or exceeds number 60 but does not exceed number 80, if valued at more than $1.40 per pound | 12% ad val. and, in addition thereto, for each number, 1/4 of 1% ad val. |

Paragraph 904 (b), as modified, *supra*—

| | |
|---|---|
| Cotton cloth, bleached, containing yarns the average number of which— | |
| Does not exceed number 60, if valued at more than 80 cents per pound; or exceeds number 60 but does not exceed number 80, if valued at more than $1.20 per pound | 10% ad val. and, in addition thereto, for each number, 1/4 of 1% ad val. |

At the trial of this action, the parties stipulated that the merchandise identified on the invoice as six bales, 9,600 yards of bleached Osnaburg, quality No. 51710, which was advisorily classified under paragraph "904(b)" is, in fact, not colored and does not contain any stripe.

As to said merchandise, the claim of the protest that it is dutiable at the rate of 11¾ per centum ad valorem in paragraph 904(b), as modified, as cotton cloth, bleached, but not colored, is, therefore, sustained.

The cloth remaining in contention was described on the invoice as "Bleached Striped Osnaburg." From a representative sample of this fabric, stated to be in the full width as it comes from the bolt, which was received in evidence as plaintiffs' exhibit 1, it appears that running lengthwise about 7⁹⁄₁₆ inches from each selvage is a colored stripe. Each stripe is approximately 1 inch in width and appears to have been formed by the use of 31 green colored warp threads in place of the white threads used elsewhere for the warp. It has not been shown, either by this sample or by the evidence, that the location of the stripes is of any significance.

Plaintiffs' witness, Fred Pollat, has been president of F. Powers Co., Inc., for about 15 years. He testified that his company is in the business of supplying and selling textiles to all linen supply laundries. Although the company handles a variety of textiles, the products which it makes from the imported cloth are industrial towels, as evidenced by plaintiffs' exhibits 2, 3, and 6, kitchen towels like plaintiffs' exhibit 5, and floor dusters for use over brooms to polish floors, plaintiffs' exhibit 4. All of the exhibits, except exhibit 6, contain one or both stripes,

depending upon whether the fabric has been cut in 18-inch widths or used in the full imported width. Plaintiffs' exhibit 6, which is used to wipe off the oil stick used for measuring the oil level of an automobile, has been washed and dyed since its initial use, and the original colored stripe is no longer visible.

Mr. Pollat testified that the colored stripe is of value primarily for the dish towel. Its purpose is to identify the individual laundry in a given area which is supplying the towel. If, for example, a towel with a yellow stripe is sold to one linen supply firm, it is not sold to any other in the general vicinity. As stated by the witness, "we don't sell the same towel in the same location to customers otherwise there would be let's say some difficulties arising as to the ownership of their towel. The stripe has no ornamental purpose, if I may say so." In effect, the stripe takes the place of the name of the company, which, otherwise, would have to be printed on the towel at additional expense.

Although the witness testified that, at the time of importation, there was no difference in price between striped and all-white cloth of this character, and that there would be no difference in value as far as his company is concerned, he did admit both that at one time there was either a quarter- or a half-cent difference in price, and that, if the fabric were not striped, the name of the customer would have to be printed on the article, which would involve an additional cost.

In support of the contention that the cloth at bar is not colored within the intendment of paragraph 904(c), as modified, *supra*, plaintiffs rely upon the proposition that colored cloth "must possess colored yarns or threads which form a necessary and substantial part of the cloth," citing *United States* v. *Bryant Beinecke*, 10 Ct. Cust. Appls. 79, T.D. 38355, and *C. R. Daniels, Inc.* v. *United States*, 16 Cust. Ct. 83, C.D. 989.

As plaintiffs' argument is developed, it appears that the words "necessary and substantial" are interpreted in terms of the purpose served by the colored stripe and the cost incurred in forming it. It is contended that, since the stripe is "merely a means of identification for the user," but otherwise serves no purpose; since it is formed in the cloth without additional cost; and since, in the case of industrial towels, the fabric is usually dyed and the stripe obliterated, the stripe did not constitute coloring within the sense of paragraph 904(c), as modified, *supra*.

Counsel for defendant urges, under authority of *Balfour, Williamson & Co.* v. *United States*, 11 Ct. Cust. Appls. 368, T.D. 39161, and *Bemis Bro. Bag Co.* v. *United States*, 11 Ct. Cust. Appls. 373, T.D. 39612, also cited in plaintiffs' brief and purportedly distinguished, that plaintiffs have not established as a fact that the instant cloth was not colored within the meaning of that term in paragraph 904(c), as modi-

fied, *supra*, and, therefore, have failed to overcome the presumption of correctness of the collector's classification of the subject cloth as colored cloth.

It is true that in the *Bryant* and *Daniels* cases, *supra*, it was held that the presence of a few colored warp threads—two in *Bryant*, six in *Daniels*—in an otherwise uncolored cotton canvas fabric, the only purpose of which was to serve as a guide in overlapping and sewing two widths together, did not convert the cloth into colored cloth for tariff purposes. But an analysis of the court of appeals decision will reveal that, in formulating the rule that "in order for cloth to be classified as colored cotton cloth, it must be cloth having colored yarns or threads which form a necessary and substantial part of the article," ultimate use and cost were not the only elements regarded as significant. The court found, as well, that the colored threads could be removed without impairing the integrity of the cloth, and, moreover, they formed "an insignificant part of the surface area of the fabric."

Although the court in the *Daniels* case followed the conclusion reached in the *Bryant* case, it considered, in addition to the fact that the stripe did not embellish the fabric or increase its cost, that the colored threads were insignificant and inconsequential and did not impart any strength to the fabric.

By contrast, the cloth here in issue, in its imported condition, contains two distinctive 1-inch stripes, each composed of about 31 colored warp threads. The removal of these threads must inevitably damage the fabric, since they represent approximately 5½ percent of the width of the cloth. And, moreover, the presence of the threads, in some instances at least, serves to identify articles made from the fabric as the products of individual laundries.

Given the proposition, which seems not to be here challenged, that cotton cloth is colored for tariff purposes if it contains some colored yarns and such yarns form a necessary and substantial part of the fabric, then, from appearance alone, the cloth here under consideration must be regarded as colored cotton cloth. For, as we interpret the prevailing authorities, condition and appearance, rather than use and cost, are the determinative factors on the issue of what constitutes a colored fabric. As stated in *Balfour, Williamson & Co.* v. *United States, supra—*

* * * the stripes are a conspicuous feature of the goods when exposed to view, and constitute a substantial part of the warp threads of the fabric.

The *Balfour, Williamson* decision, holding that a fabric with two blue stripes formed by four warp yarns each, which stripes served as guidelines for sewing pieces of cloth together, was colored cloth, rested in large measure upon the rationale of *Bemis Bro. Bag Co.* v. *United*

*States, supra.* There the cloth was a plain woven fabric, with two stripes, each composed of six warp threads occupying a surface area of about three-eighths of an inch in width, known as jute padding. The record established that this padding was used as an interlining for men's and women's coats, in which use it is concealed from view; and that, although the stripes were a traditional means of identifying jute padding in the trade, they otherwise served no useful purpose. The court's observations in support of its conclusion that the cloth before it was colored cloth within the intendment of paragraph 279 of the Tariff Act of 1913 are so pertinent to the present inquiry that we quote at length therefrom:

In many cases arising under the various tariff revisions the board and the court have been called upon to decide whether certain imported goods came within the enumeration of colored fabrics within the purview of the law. The decisions perhaps have not been entirely uniform upon the subject. However, it has been accepted as elementary that the term "colored fabrics" is not limited in application to goods which are wholly and entirely colored, but applies also to many fabrics which are colored only in part. And in respect to such partly colored fabrics it is settled that if the colored part thereof be substantial, having reference to appearance, component quantities, and other like considerations affecting the character and condition of the cloth at the time of importation, the cloth itself should be held to be colored within the sense of the act; but on the other hand if the colored part be trifling, insignificant, or negligible, the cloth should be held to be not colored. The question therefore becomes one of fact in each case respecting the actual character and condition of the goods when imported. In this view, if imported goods be colored in a substantial measure according to the foregoing definition, it is not important whether the color be ornamental, or serves a useful purpose, or is permanent, or is visible when in final use, or adds to the marketable value of the goods. For the only question asked by the statute in this particular is one relating to the actual condition of the goods at the time of their importation, and not the motive therefor nor the result thereof.

\* \* \* \* \* \* \*

The present inquiry therefore addresses itself solely to the condition of the fabric in controversy when landed, and the question is whether a substantial part thereof was in fact colored. The board has held in the affirmative, and we agree with that conclusion. It is clear that at times it may be difficult and uncertain in practice to find the dividing line between a substantial and an insignificant coloring of fabrics, and a review of the published decisions would amply sustain that statement. In this case, however, an inspection of the goods discloses that the colored stripes aforesaid, although covering less than 3 percent of the surface, are not only clearly distinguishable from the uncolored part of the fabric but are in fact distinctly observable and even conspicuous. Both in appearance and structure they form a substantial part of the surface and body of the fabric. This statement comports also with the statements of the witness that the stripes serve the pur-

pose of identifying the goods to the trade as padding, since manifestly that purpose would best be served by distinct and conspicuous markings.

Further amplification of the problem of what constitutes colored cloth for tariff purposes may be found in the court's discussion of the *Bryant* decision, and its conclusion that the colored stripe there involved was "an insignificant and not a substantial element *in the fabric as imported*." [Italics supplied.]

Under any standards which may reasonably be established for the consideration of a fabric in its condition as imported, which seemingly should take into account appearance, construction, dimensions, yarn count, and the like, there can be little doubt that the merchandise at bar is marked with a color which is substantial in surface area, necessary to the completeness of the fabric, and noticeably distinct. Notwithstanding that the insertion of the stripe adds nothing to the cost of the cloth, and its presence may be of questionable value to the importer, it serves to impart color to the cloth, and we have no hesitation in concluding that cloth of this character is colored cloth within the purview of paragraph 904(c), as modified, *supra.* As to such cloth, identified on the invoice as "Bleached Striped Osnaburg," all claims in the instant protest with respect thereto are, therefore, overruled. However, as hereinabove indicated, inasmuch as the cloth invoiced as six bales, 9,600 yards of bleached Osnaburg, quality No. 51710, contains no stripe and has not been colored, the claim for classification thereof in paragraph 904(b), as modified, *supra*, as cotton cloth, not colored, with the consequent assessment of duty at the rate of 11¾ per centum ad valorem is sustained.

Judgment will be entered accordingly.