### CRUIKSHANK v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. January 12, 1894.)

#### No. 56.

1. CUSTOMS DUTIES—CLASSIFICATION—"BIRD PEPPERS."
   Sierra Leone "chillies" or "bird peppers," whole, but in a dried state, are exempt from duty, as spices not edible, under paragraph 560 of the tariff act of 1890, and are not dutiable as Cayenne pepper unground, under paragraph 326. 54 Fed. 676, reversed.

2. SAME—DEFINITIONS.
   "Edible," as used in paragraph 560, is to be taken in its common meaning. 54 Fed. 676, reversed.

Appeal from the Circuit Court of the United States for the Southern District of New York. Reversed.

Comstock & Brown, (Albert Comstock, of counsel,) for appellant.
Edward Mitchell, U. S. Atty., (Thos. Greenwood, Asst. U. S. Atty., of counsel,) for the United States.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. This is an appeal by the importer from a decision of the United States circuit court for the southern district of New York, affirming a decision of the board of United States general appraisers to the effect that certain merchandise imported by the appellant into the port of New York was subject to duty. 54 Fed. 676. The appellant imported certain "chillies" or "bird peppers," whole, but in a dried state, a product of Sierra

Leone, and they were classified and subjected to duty by the collector under paragraph 326 of the tariff act of 1890. That paragraph reads as follows:

"Spices, ground or powdered, not specially provided for in this act, four cents per pound; Cayenne pepper, two and one-half cents per pound, unground; sage, three cents per pound."

The importer protested, insisting in his notice that the importations were exempt from duty under paragraph 560 of the free list, which reads as follows:

"Drugs, such as barks, beans, berries, balsams, buds, bulbs and bulbous roots, excrescences such as nut galls, fruits, flowers, dried fibers and dried insects, gums, grains and gum resin, herbs, leaves, lichens, mosses, nuts, roots and stems, spices, vegetables, seeds aromatic and seeds of morbid growth, weeds, and woods used expressly for dyeing; any of the foregoing which are not edible and are in a crude state, and not advanced in value or condition by refining or grinding, or by other process of manufacture, and not specially provided for in this act."

The board of general appraisers affirmed the decision of the collector, and from that decision the importer appealed to the circuit court. The board of appraisers found, as matters of fact, that Cayenne pepper is a preparation from the dried fruit of various species of capsicum, and that the bird peppers or chillies in question were a species of capsicum of the kind largely used in the manufacture of Cayenne pepper, and that they were edible. They decided, as matter of law, that the term "edible" in paragraph 560 applies to spice as well as to the numerous other articles enumerated in that paragraph, and that, as the importations in question were a spice which was edible, the claim of the importers was not well taken. There was no evidence before them tending to show that the importations were edible. Upon the appeal by the importer to the circuit court, new evidence was introduced. The circuit court adopted the conclusions of the board of appraisers.

The evidence in the record shows that the genuine Cayenne peppers are a product of Cayenne, South America; that chillies and bird peppers are used largely by manufacturing druggists for making capsicum plasters and other medicinal preparations, and also by spice dealers for making the article commercially known as "Cayenne pepper," in which the ingredients are capsicum, rice flour, and other mixtures; that they are not known commercially as unground Cayenne pepper; that there is a Cayenne pepper prepared in South Africa, and imported in small quantities into this country, which is not ground. The Encyclopedia Britannica describes Cayenne pepper as follows:

"Cayenne pepper is manufactured from the ripe fruits, which are dried, ground, mixed with wheat flour, and made into cakes with yeast. The cakes are baked hard, until like biscuit, and then ground and sifted. The pepper is sometimes prepared by simply drying the pods, and pounding them fine in a mortar."

The evidence also shows that pepper made from the genuine Cayenne peppers is almost unknown to the trade in this country, and there is no evidence to show that the genuine Cayenne peppers

are ever imported into this country. The evidence taken in the circuit court shows very conclusively that dried chillies or bird peppers are not eatable. They cannot be taken into the mouth without blistering or burning it, and they cannot be masticated without producing strangulation.

The term "unground" pepper does not aptly describe the dried peppers imported by the appellant. It is used in paragraph 326 in contradistinction to "ground or powdered." By paragraph 580 of the same tariff act dried fruits not elsewhere specially provided for are free of duty. The importations in question are undoubtedly spices, as well as drugs, and, although they might properly be regarded as dried fruits, they are not exempt from duty by paragraph 580 because they are more specifically enumerated as spices. But paragraph 580 is of some value as showing the intention of congress to put the general class to which the importations belong upon the free list. The term "unground Cayenne pepper" appropriately describes a partly prepared commercial article which has not been advanced to its final condition by being ground or powdered. The term fits the article mentioned in the Encyclopedia Britannica, and imported into this country from South Africa in small quantities, as shown by the testimony in the record. This view is strengthened by an inspection of previous tariff acts, by which it appears that congress, in laying duties on Cayenne pepper, has uniformly treated it as of two kinds, imposing the higher duty upon the ground, or finally advanced, article. By the act of March 2, 1861, (12 Stat. 183,) the duty was imposed as follows: "On Cayenne pepper, 3 cents per pound; on ground Cayenne pepper, 4 cents per pound." By the act of August 5, 1861, (12 Stat. 292,) the duty was imposed "on Cayenne pepper, 6 cents per pound; on Cayenne pepper, ground, 8 cents per pound." By the act of July 14, 1862, (12 Stat. 547,) duty was imposed on "Cayenne pepper, 12 cents per pound; ground, 15 cents per pound." By the act of July 14, 1870, which was reproduced in the Revised Statutes in 1874, and continued in force until the act of 1890 was passed, no distinction was made between ground and unground Cayenne pepper. Thus, from 1870 until the tariff act of 1890, both the ground and the unground article were dutiable as "Cayenne pepper." The present act revives the earlier classification, and lays a duty on Cayenne pepper by enumerating it as a "spice, ground or powdered," and a lower duty on the unground, by its specific name. It is not open to doubt that importations like those in controversy would not have been subject to duty from 1861 to 1890 as Cayenne pepper, because it is to be assumed that congress used that term in its commercial signification, and intended to impose the duty only on the commercial article of Cayenne pepper in one or both of its two recognized forms.

As the importations have never been known in trade and commerce as "Cayenne pepper, unground," and that term, in its ordinary sense, does not appropriately describe them; and as it is plain that congress had always, previous to the present act, applied the term "unground" to Cayenne pepper to describe a variety of the

commercial article which was not advanced to the ground or powdered state; and as the word "unground," as used in paragraph 326, is to be presumed to mean what it always meant in previous tariff legislation,—we conclude that the importations were not the unground Cayenne pepper which congress has intended to subject to duty. It is not material that they can be converted into the dutiable article by mixing them with other ingredients, and subjecting them to the various processes bestowed upon that article, or even by advancing them a single step in the process of preparation. The law deals with them as they are, and not as they can be made to be.

It remains to consider whether the protest of the importer properly specified the objection to the classification of the merchandise. Paragraph 560 exempts from duty "drugs, such as barks, beans, berries, * * * spices, * * * vegetables, * * * woods used expressly for dyeing, * * * any of the foregoing which are not edible." If such spices as he imported are excluded from paragraph 560 because they are not within the category, "any of the foregoing which are not edible," the objection is fatal. It is not claimed for the appellee that chillies and bird peppers are "edible," in the ordinary meaning of the term. The learned judge who decided the case in the circuit court was of opinion that spices were within the category of edible things, and that congress must have meant to exclude from the exemption all spices edible in the sense in which spices are edible,—as a sauce, a condiment, or a relish. But the evidence which was before the circuit court, although not before the board of general appraisers, shows very clearly that chillies and bird peppers in their dried state, whole, are not edible in any sense. Even when ground, the powder is mixed with other ingredients before it can be used as a condiment, and as thus prepared it is one of the most pungent condiments known.

We cannot suppose that congress intended to admit spices free of duty, and at the same time to exclude from the exemption all spices which are edible in the sense in which every spice is edible. Such legislation would be absurd. If there are any spices which are nonedible, the importations, according to the evidence, belong in that class. There is no necessity, and certainly no propriety, in placing a strained and violent meaning upon the phrase, "any of the foregoing which are not edible." Many of the articles enumerated in the paragraph are those having well-known edible qualities. Thus, there are beans, buds, bulbous roots, fruits, dried fibers, grains, gums, herbs, leaves, nuts, and vegetables, all of which include esculent varieties. Many of the other enumerated articles in the paragraph are not edible in any sense, such as dried insects, gum resin, lichens, mosses, seeds of morbid growth, and woods used expressly for dyes. It is reasonable to suppose that congress used the term "edible" in its ordinary sense, and intended to exclude from the exemption such of the enumerated articles as are edible according to common understanding. It may be that there are spices fit to be eaten as food, and which fall within the excluded

category. However that may be, we must conclude from the evidence in the record that those like the importations are not. It follows that the protest was sufficient.

The decision of the circuit court and of the board of appraisers is reversed.