(C. D. 1688)

SCHALL & Co. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided March 24, 1955)

*John D. Rode* (*Ellsworth F. Qualey* of counsel) for the plaintiff.
*Warren E. Burger*, Assistant Attorney General (*Dorothy C. Bennett*, trial attorney), for the defendant.

Before EKWALL and JOHNSON, Judges

JOHNSON, Judge: This is a protest against the collector's assessment of duty on angelique or angelica glace at 20 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930 as a nonenumerated manufactured article. It is claimed that the merchandise is dutiable at 10 per centum ad valorem under said paragraph, as modified by the Torquay Protocol to the General Agreement on

Tariffs and Trade, T. D. 52739, and the President's proclamation of September 18, 1951, T. D. 52827.

The pertinent provisions of said paragraph, as originally enacted and as modified, are as follows:

PAR. 1558 [as originally enacted]. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

PAR. 1558 [as modified]. Articles manufactured, in whole or in part, not specially provided for (except the following: * * * edible preparations for human consumption other than yeast), 10% ad val.

At the trial, plaintiff introduced into evidence a sample of angelica glace, which, according to William H. Morris, president of the plaintiff company, was representative of the imported merchandise, although taken from another shipment (plaintiff's illustrative exhibit 1). It appears to consist of flattened plant stalks completely covered by a transparent whitish substance which has solidified. According to the testimony in this case and that in *Schall & Co., Inc.* v. *United States*, 66 Treas. Dec. 664, T. D. 47385, incorporated herein, it is made of stalks of the angelica plant which have been cut and boiled in sugar and water, so that a deposit of crystallized sugar is formed around the stalks. It is said not to have much taste but to have an element of sweetness.

The witness Morris testified that he has been familiar with this type of merchandise for 40 years and has sold it to bakers, to distributors and jobbers, who sell it to the bakery trades, and to a firm of grocers. It is bought and sold as angelique or angelica and is not specified as edible or inedible. It is used as a decoration on cakes, is eaten with the cakes, and is not harmful for human consumption. The witness stated that the purpose of the sugar is to preserve the plant; that he had never bought any without the sugar; and that it is desirable because it is sweet.

In the incorporated case, the witness Arthur A. Morris, vice president of the plaintiff company, testified that the merchandise is used by bakers to garnish cakes, being cut up in strips or made into fancy forms for the purpose. The pieces are put on the frosting, which holds them to the cake, and they are eaten with the frosting.

In the instant case, defendant called Erik N. Holmgren, customs examiner, who testified that he had inspected imports of angelica glace by the plaintiff herein; that he had eaten some of it and had seen his assistant, the inspector for the Food and Drug Administration, and several other men eat it. He said that this merchandise had been passed as approved by the Food and Drug Administration, as was indicated by the stamp on the summary sheet (defendant's exhibit A).

He had never heard of its being injurious to humans if eaten. He had seen it on sale in grocery stores, fruiterers, and department stores, had made purchases recently in New York City at the Vendome Foods and R. H. Macy, and had seen it at Charles & Co. The items purchased at Vendome Foods and R. H. Macy were received in evidence as defendant's illustrative exhibits B and C, respectively. The witness said that when he purchased the former, he asked for angelica, and that he found the latter in the grocery department in the aisle called "Fruit Specialties," where glaceed fruits and candied peels were also on sale.

Defendant's illustrative exhibit B contains the following statement on the package:

This package contains the candied stalks of HERBA ANGELICA, a fragrant plant which was very popular in olden days. It can be used to decorate cakes and puddings and gives them a wonderful spicy flavour. When chopped fine and used in small quantities, it enriches the taste of mincemeat. It may also be eaten as a sweetmeat or candy.

The witness stated that it was not glaceed to the same extent as plaintiff's illustrative exhibit 1 and was not as sweet, having more of a pungent, spicy flavor.

Defendant's illustrative exhibit C is described on the label as "GLACE ANGELICA IN STICKS," and is stated to consist of angelica and sugar. The witness said it had a more spicy taste than the importer's sample and was not as heavily sugared. He explained that, in speaking of the spicy flavor, he did not mean any added spice but the flavor of the angelica itself.

In *Schall & Co., Inc.* v. *United States, supra,* the incorporated case, it was held that glace angelica was properly dutiable under paragraph 1558 of the Tariff Act of 1930 as an unenumerated manufactured article. See to the same effect *Southern California Supply Co.* v. *United States,* 63 Treas. Dec. 1432, Abstract 23671; *May Dept. Stores, Inc.* v. *United States,* 66 Treas. Dec. 1024, Abstract 29135. The question before us now is whether such merchandise is entitled to entry at the reduced rate of duty under said paragraph, as modified, or whether it falls within the exception covering "edible preparations for human consumption other than yeast."

Plaintiff concedes that the merchandise can be eaten without deleterious effect, but claims that this fact does not make it an edible preparation for human consumption on the ground that its use is as a decorative item and not as food and that it is not a preparation, as that term is used in tariff statutes.

The leading case on the question of the meaning of the term "edible" is *United States* v. *Yick Shew Tong Co.,* 25 C. C. P. A. (Customs) 255, T. D. 49392. That case involved certain Chinese nuts, seeds, fruits, and lily bulb scales, which, according to the testimony, were used by

the Chinese portion of our population, not as part of their regular diet but for medicinal purposes. They were held classifiable as drugs under paragraph 1669, Tariff Act of 1930, the court stating (pp. 267–268):

> \* \* \* It is true that one of the requirements of that paragraph is that the articles shall not be edible, and it is proven here that the products have been eaten without any deleterious effects. This fact, however, in view of all the testimony, does not seem to us to remove them from the paragraph. Many articles whose drug character is indisputable doubtless can be eaten in moderation without deleterious results. The word edible, we think, must be given its common meaning and construed in the sense of its ordinary use and acceptance. Webster's New International Dictionary gives the adjective meaning of the word as "Fit to be eaten *as food*; eatable; esculent; as, *edible* fishes." [First italics ours.]

> The definitions by other authorities are of the same purport. That given by the Century Dictionary and Encyclopedia reads:

>> *Edible*—1. a. Eatable; fit to be eaten as food; esculent; specifically applied to objects which are *habitually* eaten by man, or *specifically* fit to be eaten, among similar things not fit for eating; as edible birds' nests; edible crabs; edible sea-urchins. \* \* \* [Italics new here.]

> In view of the use which is shown of the products here involved, we do not regard them as being edible in the common and usual understanding of that term.

This holding was approved in *F. W. Myers & Co., Inc.* v. *United States*, 29 C. C. P. A. (Customs) 30, C. A. D. 167, where it was held that beef livers of the same class and kind as beef livers consumed as meat food in the United States were dutiable as meats, rather than as drugs, although imported for use in the manufacture of medicinal preparations and not passed as food by the Bureau of Animal Industry. On the other hand, in *United States* v. *Judson-Sheldon Corp.*, 37 C. C. P. A. (Customs) 89, C. A. D. 424, it was held that beef livers imported from Argentina were classifiable as drugs, since they were barred from entry into the United States, except for pharmaceutical purposes, and were considered unfit for human consumption, although some of them had been cooked and eaten without ill effects.

A recent case, *Van Gelder-Fanto Corp.* v. *United States*, 41 C. C. P. A. (Customs) 90, C. A. D. 534, involved cholesterol, a product generated in animal organisms and extracted from brains and spinal cords of animals and also obtained from wool grease. The court found that the substance occurred in many food products, that it could be taken without deleterious results, but that it was not eaten as a food and had no food value. It was, therefore, found to be "not edible."

Plaintiff has also called to our attention another line of cases in which it was held that certain spices and herbs were not "edible" and were classified as drugs. *Cruikshank* v. *United States*, 59 Fed. 446; *Oppenheimer & Co.* v. *United States*, 6 Treas. Dec. 62, T. D. 24173.

The *Cruikshank* case involved "chillies" or "bird peppers," whole, dried, which were classified by the collector as Cayenne pepper, un-

ground. It was held that the merchandise was not Cayenne pepper, unground, but was entitled to free entry under the provision for drugs, such as spices, not edible. There was evidence that the merchandise could not be eaten without harmful effects and was used largely by druggists for making plasters and other medicinal preparations. The court, in its opinion, stated (pp. 449–450):

* * * It is reasonable to suppose that congress used the term "edible" in its ordinary sense, and intended to exclude from the exemption such of the enumerated articles as are edible according to common understanding. It may be that there are spices fit to be eaten as food, and which fall within the excluded category. However that may be, we must conclude from the evidence in the record that those like the importations are not.

Following that case, it was held in the *Oppenheimer* case that marjoram and thyme leaves, known as drugs, and used for flavoring and seasoning, and as preservatives, were not edible and were classifiable as drugs.

Under subsequent tariff acts, wherein the term "drug" was limited to substances having therapeutic properties and used for medicinal purposes, it was held that herbs, such as laurel leaves and marjoram leaves, were classifiable as crude vegetable substances and not as drugs. *The Levy & Levis Co., Inc.* v. *United States*, 23 Cust. Ct. 8, C. D. 1180, and cases there cited.

In the instant case, the evidence establishes that angelica glace can be eaten without deleterious effects and that it is eaten habitually as part of the cake which it garnishes. While it may be used because of its eye appeal as a decoration, it is *eaten* as part of an article of food. Many foods are prepared so as to have a pleasing appearance, but they are still foods and are consumed as such. Whether or not the angelica stalk *per se* has food value does not appear in the record, but the imported merchandise contains, in addition, a large amount of sugar, a well-known food. We note also that in *E. Reboulin Fils & Co.* v. *United States*, 7 Treas. Dec. 64, T. D. 24917, it was held that angelica stalks could not be classified under a provision for "drugs such as * * * vegetables * * * which are drugs and not edible," since angelica, although a drug, was edible, after proper preparation. See also Collier's Encyclopedia, volume 2, page 4, where it is stated that angelica is used medicinally; when candied, as a confection; and, in northern Europe, as food.

We conclude that angelica glace is "edible" within the meaning of that term, as commonly understood and as used in tariff statutes.

Plaintiff claims further that even if the merchandise is "edible," it is not a "preparation"; that a "preparation" must be something more than a prepared stalk; that it must be a mixture or combination of several ingredients.

The word "preparation" has been defined, so far as here pertinent, as follows:

\* \* \* something prepared, manufactured, or compounded (as, a medicinal *preparation*; a food *preparation*) \* \* \*. [The New Century Dictionary, 1946 edition.]

Something made or prepared, especially a compound, concoction, or composition; as, medicinal or chemical *preparations*; a food *preparation*. [Funk & Wagnalls New Standard Dictionary, 1942 edition.]

That which is prepared; something made, equipped, or compounded for a particular purpose; as: **a** Any medicinal substance fitted for use. **b** Anything treated for preservation or examination. [Webster's New International Dictionary, 1953 edition.]

The term has been considered by the courts in several cases involving tariff statutes. In *Middleton & Co.* v. *United States*, 151 Fed. 16, T.D. 27749, it was held that arrowroot, consisting of a fine floury form of starch extracted from the tubers or roots of the arrowroot plant, was dutiable as a preparation fit for use as starch. This merchandise was apparently not a mixture or combination of ingredients.

In *United States* v. *Aetna Explosives Company*, 256 U. S. 402, it was held that nitric acid, to which a certain amount of sulphuric acid had been added to prevent corrosion of the steel tank cars in which it was transported, was not dutiable under a provision for chemical and medicinal compounds, preparations, mixtures, and salts. The court quoted with approval from the opinion below as follows:

The word "preparations" [in paragraph 5] implies of course that they are something prepared and adapted to particular uses or services. It is no stretch to say that the word "mixtures" as here employed was used in a similar sense to import mixtures susceptible of commercial use as they exist, or are at least such as are purposely started on their way toward adaptation to such use. \* \* \*

\*　　\*　　\*　　\*　　\*　　\*　　\*

\* \* \* The sole purpose for which this addition was made was to admit of shipment. It would be sticking in the bark to say that this was such a mixture as the statute in question contemplates. It is not yet prepared. It has not been advanced as a preparation for actual use \* \* \*.

In *Columbo Co., Antonino Badalament* v. *United States*, 21 C. C. P. A. (Customs) 302, T. D. 46819, it was held that tomato paste was not classifiable as a paste composed of vegetables under paragraph 775, Tariff Act of 1930, on the ground that that provision was intended to cover finished food preparations, whereas tomato paste was a mere material to be used as an ingredient of such preparation.

In the recent case of *United States* v. *The Crosse & Blackwell Company*, 42 C. C. P. A. (Customs) 99, C. A. D. 579, while the point was not directly involved, it was assumed throughout that condensed or concentrated soup, which required the addition of water for use, was a soup preparation.

In the instant case, the merchandise is a finished product, not a material to be used in making something else; it is a combination of ingredients prepared for a particular purpose and ready for its in-

tended use. It is, therefore, a "preparation," as that term is commonly understood and as construed by the courts in tariff cases.

For the reasons stated, we hold that the instant merchandise, angelica glace, is an edible preparation for human consumption and that it falls within the exception in paragraph 1558, as modified. It is properly dutiable, as assessed by the collector, at 20 per centum ad valorem under paragraph 1558, as originally enacted, as a nonenumerated manufactured article. The protest is overruled and judgment will be rendered for the defendant.