(C.D. 2117)

FRED L. STRAUSS *v.* UNITED STATES

United States Customs Court, Third Division

(Decided September 16, 1959)

*John D. Rode* (*Ellsworth F. Qualey* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Sheila N. Ziff* and *Margaret M. Kiley*, trial attorneys), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

DONLON, Judge: The issue here is whether bubble gum is "an edible preparation for human consumption." If it is, the Torquay protocol modification (T.D. 52739) of paragraph 1558 of the Tariff Act of 1930 is not applicable. If bubble gum is not "an edible preparation for human consumption," it is conceded that it is entitled to the benefits of this Torquay protocol modified rate.

The collector classified the bubble gum as "an edible preparation for human consumption" and assessed duty at the unmodified rate of 20 per centum ad valorem. Plaintiff contends that bubble gum is *not* "an edible preparation for human consumption" and that it should, therefore, be assessed with duty at the modified rate of 10 per centum ad valorem.

On trial, plaintiff introduced the testimony of a witness and also a representative sample of the imported bubble gum. (Exhibit 1.) Defendant introduced the testimony of two witnesses and a laboratory report. (Exhibit A.)

Mr. Fred L. Strauss, for whose account the bubble gum was imported, testified for plaintiff. Mr. Strauss is an importer of food specialties and candy. He sells bubble gum to candy wholesalers. He testified that, like other gums, bubble gum is chewed and, after a period of chewing, is discarded. It is not customarily swallowed. It is not chewed for nourishment. Bubble gum contains sugar, pri-

marily for taste, and the sugar gives bubble gum temporarily a sustained flavor. (R. 6.)

On cross-examination, Mr. Strauss testified that imported bubble gum has to meet certain standards that have been prescribed by the Food and Drug Administration of the United States Department of Agriculture, and that a statement of the ingredients of bubble gum must be shown on the wrapper. The ingredients thus stated, as to this bubble gum, are gum base, sugar, glucose, artificial flavor, and United States certified color.

Mr. Irving Sporn, chemist in the United States Customs Laboratory, testified for defendant. As part of his regular duties he made an analysis of bubble gum, similar to the gum of exhibit 1 and containing the same ingredients. His report, in evidence as exhibit A, shows that gum similar to the gum of exhibit 1 has the following approximate composition:

| | |
|---|---|
| Sucrose | 66. 2% |
| Invert Sugar | 0 |
| Total Sugar | 66. 2% |
| Dextrose Syrup (Commercial Glucose) | 14. 0% |
| Calcium Carbonate | 2. 2% |
| Gum Base | 17. 6% |

The above percentages are by weight. Each of the identified constituents is a separate component in the bubble gum. Mr. Sporn testified that the coloring matter, listed on the wrapper as an ingredient, was not accounted for in his analysis because it was present in such very small quantity that it would not affect the report. The dextrose syrup (glucose), shown in the report, is a sweetener. Mr. Sporn conceded that if an analysis were made by volume, such analysis would be different from the analysis by weight.

Defendant's second witness, Morris Nafash, is chief chemist for Topps Chewing Gum Co. He is a graduate of Columbia University, in 1923 with the degree of bachelor of arts and in 1925 with the degree of chemical engineer. He did general research in the chemical engineering department of Columbia University for 11 years before going with Topps Chewing Gum Co., a manufacturer of chewing gum base, chewing gum, and bubble gum of various kinds. In his duties as chief chemist, Mr. Nafash establishes the formulae used by Topps in manufacturing chewing gum and bubble gum. His work includes general research on chewing gum products. He testified that the analysis as reflected in exhibit A falls within the general range for Topps bubble gum. He is familiar with the ingredients used in bubble gum, and stated that the sugars and dextrose syrup contained would be swallowed when chewed and digested, forming the basis of energy, as any other food does. It was his opinion that the syrup and sugars in bubble gum are food. The gum base and a

small amount of calcium carbonate, which is part of the gum base, remain after chewing. The gum base and carbonate have no "effect" on the human system if they are swallowed.

It was Mr. Nafash's opinion that the proportion of ingredients, by volume, would be almost the same as by weight. (This is contrary to Mr. Sporn's view.) After chewing, the gum base is approximately the same whether by volume or weight. After chewing, it appears to be greater because saliva is absorbed by the gum base in the process of chewing. Topps Chewing Gum Co. is subject to regular inspection and examination by Federal, State, and City health agencies, chiefly for cleanliness in the manufacture of food products. Topps is licensed by the Health Department of New York City to manufacture and maintain food materials on the premises.

On cross-examination, Mr. Nafash testified that Topps chewing gum is merchandised as a food product, through the outlets that sell candy and similar products. The gum base has no beneficial effect on the human system. The purpose of the sugar coating on gum is to make it more tasty, but the sugar also gives nutrition. Taste is the primary purpose of the sugar. Mr. Nafash was of opinion that if enough gum were chewed it would furnish sucrose sufficient to the needs of one's health. Mr. Nafash testified that he did not know why people chew bubble gum, but he is satisfied that the person chewing gum is nourished by the sugar, syrup, and flavors, albeit the gum base is chewed only to a small extent after the flavor disappears, being eventually discarded. The fact that bubble gum can be bubbled for added pleasure, would not detract from the nourishment it gives in the extra sugar, which he said is "three times as much sugar" as in the ordinary piece of gum.

The Torquay protocol rate modification of "edible preparations for human consumption other than yeast" has been construed in at least two cases. *Schall & Co.* v. *United States*, 34 Cust. Ct. 110, C.D. 1688; *United States* v. *P. John Hanrahan, Inc.*, 45 C.C.P.A. (Customs) 120, C.A.D. 684. In *Schall & Co.*, we held that angelica glace, processed from leafstalks of the angelica plant and candied and used to decorate cakes, is an edible preparation for human consumption other than yeast, being a cake decoration habitually eaten with the cake.

The merchandise of *P. John Hanrahan, Inc.*, *supra*, was vitalized wheat gluten, which could not be eaten unless and until converted into some other form. One use is as an ingredient of bread. We held that vitalized wheat gluten was a preparation, but in the imported form it was not an *edible* preparation for human consumption and, hence, was within the Torquay modification. *P. John Hanrahan, Inc.* v. *United States*, 39 Cust. Ct. 37, C.D. 1900. On appeal, one judge dissenting, our decision was reversed. *Id.* v. *id.*, 45 C.C.P.A.

(Customs) 120, C.A.D. 684. The appeals court, in the majority, opinion said:

We find no reason for applying to the word "edible," as here under consideration, any meaning other than its common one which, in our opinion, embraces a preparation such as the instant merchandise, *which is commonly used as an ingredient of foods and is prepared for that purpose.* It is not necessary that the preparation should normally be eaten in the condition in which it is imported. It is, of course, true, as urged by appellee, that classification must be determined on the basis of the condition of the merchandise at the time of importation, but the instant merchandise, as imported, is capable of being eaten, and therefore is edible even though it must be mixed with other ingredients and cooked before the actual eating takes place. [Emphasis supplied.] [P. 124.]

In applying common meaning to the word "edible," the majority of the appeals court followed *United States* v. *Yick Shew Tong Co.*, 25 C.C.P.A. (Customs) 255.

Plaintiff cites the *Schall* and *P. John Hanrahan, Inc.*, cases in support of his argument that bubble gum is a preparation, but argues that, under those cases and the *Yick Shew Tong Co.* case *supra*, bubble gum is not an *edible* preparation.

The edible character of the preparations angelica glace and vitalized wheat gluten is of scant assistance to us in determining whether the preparation bubble gum is edible.

Angelica glace, the decoration substance in *Schall & Co.*, actually is "edible," for it is habitually eaten. The preparation vitalized wheat gluten was held, in *P. John Hanrahan, Inc.*, to be "edible," because it is customarily eaten (albeit not in the imported form) as an ingredient of bread, and is prepared for that purpose.

There is not a shred of evidence before us that the preparation bubble gum is ever eaten, except perhaps when inadvertently swallowed. Bubble gum is chewed as a masticatory. In common understanding, this means that it is chewed, but not swallowed as food is swallowed.

It is quite true, as defendant argues, that the preparation bubble gum contains as components sugar and dextrose syrup which are swallowed in the masticatory process. The Torquay provision refers to an imported preparation. That preparation, in the instant case, is bubble gum. It is not "sugar and dextrose." If the rule of common meaning is to serve, there should be a common understanding of the point of reference. The common meaning to be applied is that of the imported preparation, not of its several components. While the sugars and syrup in the preparation "bubble gum" are nutritious when swallowed, and in that sense they (the sugars and syrup) are edible, there is no such evidence as to the preparation "bubble gum." To the contrary, it appears that bubble gum is not customarily eaten and swallowed.

That the Federal Food Drug and Cosmetic Act found it necessary to include chewing gum, for purposes of that act, in the term "food" by special definition (21 U.S.C. § 321, 1952 ed.) may emphasize the common understanding that chewing gum is not ordinarily considered as a food which is an edible preparation for human consumption. Definitions and standards established by the Department of Agriculture may be of interest, but it is now settled that they do not control customs classification. *United States* v. *Mercantil Distribuidora et al.*, 45 C.C.P.A. (Customs) 20, C.A.D. 667.

On the record before us, the preparation is bubble gum and bubble gum is not commonly eaten and swallowed as food. In common understanding, it is a masticatory, chewed, but not swallowed. It is not, therefore, "edible" within the common meaning of that term in customs law.

Judgment will be entered for plaintiff.